Case 4:25-cv-00269   Document 1-3   Filed on 01/22/25 in TXSD   Page 1 of 19

12/5/2024 2:38 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 94990891
By: Taiasha Bradford
Filed: 12/5/2024 2:38 PM

CAUSE NO. _____

| | | |
|---|---|---|
| JOSHUA FRANKLIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | IN THE _____ DISTRICT COURT |
| v. | § | |
| | § | |
| ACCESS RESTORATION | § | |
| SERVICES US, INC., | § | HARRIS COUNTY, TEXAS |
| GLOBAL ESTIMATING SERVICES, | § | |
| INC., | § | |
| AUTUMN K. GARIBAY, | § | |
| NATHAN NORMOYLE, and | § | |
| MICHAEL NEEDHAM, | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL PETITION AND JURY DEMAND

COMES NOW, Plaintiff Joshua Franklin, and hereby bring his claims against Defendants Access Restoration Services US, Inc. ("ARS"), Global Estimating Services, Inc. ("GES"), Autumn K. Garibay, Nathan Normoyle, and Michael Needham, for breach of contract and related claims (against GES and ARS), overtime violations of the Fair Labor Standards Act of 1938 ("FLSA") (against all Defendants), and any other claims indicated by the evidence in the case. Franklin makes the following allegations and statements to support his claims:

### I. DISCOVERY CONTROL PLAN & MANDATORY DAMAGES STATEMENT

1.      Pursuant to Texas Rule of Civil Procedure 190.4, discovery is to be conducted under Discovery Control Level 1.

2.      Pursuant to the requirement of Texas Rule of Civil Procedure 47 that Plaintiff state prospectively an amount for his claim, Plaintiff seeks only monetary relief of $250,000 or less, exclusive of any pre- or post-judgment interest, statutory or punitive damages and penalties, and attorney's fees and costs.

3.      Plaintiff Franklin also seeks a judgment for all other relief to which he deems himself entitled by law.

## II. JURISDICTION AND VENUE

4.      Venue is proper in Harris County, Texas, as Franklin worked pursuant to an employment agreement that stated that he and GES "agree to jurisdiction in the state or federal Courts of Harris County, Texas concerning any disputes related to this Agreement." The issues concern his unpaid compensation, which is connected to that employment agreement. The damages and issues claimed are within the jurisdictional limits of this Court. This Court has personal and subject matter jurisdiction over the parties to this suit. Both defendant entities are registered in and do business in the state of Texas, and both have their headquarters in Texas. All three individual defendants committed acts relevant to this suit while employed out the Texas-based headquarters for the two defendant entities. This Court has subject matter jurisdiction over the state law questions as a matter of law and jurisdiction over the federal FLSA claims pursuant to 29 U.S.C. 216(b).

## III. FAIR LABOR STANDARDS ACT JURISDICTION AND COVERAGE ISSUES

5.      Pursuant to 29 U.S.C. 216(b), an action to recover unpaid wages and other damages under the Fair Labor Standards Act may be maintained against any employer in any state or federal court of competent jurisdiction.

6.      At all times hereinafter mentioned, Defendants have each been an "employer" as to Plaintiff within the meaning set out in Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

7.      At all times hereinafter mentioned, Defendant GES[1] has been an enterprise within the meaning set out in Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

---

[1] As alleged in this complaint, all acts by and liabilities of GES are legally those of ARS as well, due to the fact that GES was acting as the alter ego of ARS and ARS was a joint employer of Plaintiff with GES.

8.      At all times hereinafter mentioned, Defendant GES has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, dealing in, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes). Both ARS and GES had an annual gross volume of sales made or business done of not less than $500,000 in 2022 and in 2023.

9.      At all times hereinafter mentioned, Plaintiff was an individual employee who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

10.     Plaintiff in his position as a Field Inspector was not exempt from the overtime provisions of the FLSA, and was therefore entitled to the overtime protections of that law.

11.     ARS and GES were a joint enterprise for purposes of FLSA applicability and liability. Both ARS and GES were part of the same business operation, with GES simply performing the property damage estimating duties to support ARS's unlawful business agreement with the MMA Law Firm as well as ARS's mitigation business operations in southwest Florida following Hurricane Ian in 2022. ARS and GES shared many of the same executives and resources, including Defendants Normoyle and Needham.

## IV. PARTIES

12.     Plaintiff Joshua Franklin ("Franklin") is an individual resident of West Baton Rouge Parish, Louisiana. The last three digits of LA driver's license are 723. The last three digits of his social security number are 135.

13.   Defendant Access Restoration Services US, Inc. is a foreign for-profit corporation registered in, doing business in, and headquartered in the state of Texas. ARS may be served with citation at the following Texas registered agent for the company:

Andrews Meyers PC
1885 St James Place 15th Floor
Houston, TX 77056 USA

14.   Defendant Global Estimating Services, Inc. is a foreign for-profit corporation registered in, doing business in, and headquartered in the state of Texas. GES may be served with citation at the following Texas registered agent for the company:

C T Corporation System
1999 Bryan St. Suite 900
Dallas, TX 75201-3136 USA

15.   Defendant Autumn K. Garibay ("Garibay") is an individual resident of Harris County, Texas. Defendant Garibay may be served with summons at her residential address of:

Autumn Garibay
23770 Springwoods Village Pkwy, Apt. 314
Spring, TX 77373-5097

During her employment with GES, Garibay moved from Arizona to Texas to act as general manager for GES and conducted the business activities of GES and ARS out of GES and ARS's headquarters in Conroe, Texas.

16.   Defendant Michael Needham ("Needham") is an individual resident of Montgomery County, Texas. Defendant Needham may be served with citation at the following address:

Michael Needham
c/o Access Restoration Services US, Inc.
27657 Commerce Oaks Drive
Conroe, Montgomery County, TX 77385

During the facts relevant to this dispute, Needham conducted business on behalf of GES and ARS in the state of Texas and worked out of the companies' headquarters in Conroe, Texas.

17. Defendant Nathan Normoyle ("Normoyle") is an individual resident of Harris County, Texas. Normoyle may be served with summons at his residential address of:

**Nathan Normoyle**
**22511 Trailwood Lane**
**Tomball, Harris County, TX 77375**

During the facts relevant to this dispute, Normoyle conducted business on behalf of GES and ARS in the state of Texas and worked out of the companies' headquarters in Conroe, Texas.

## V. BACKGROUND FACTUAL ALLEGATIONS

Upon Plaintiff's information and belief:

18. During the period of time relevant for the issues in this case, ARS was primarily involved in for-profit disaster remediation services in the United States.

19. Per Texas Secretary of State records as well as its website,[2] the US corporate headquarters for ARS is located at 27657 Commerce Oaks Dr., Conroe, Texas.

20. On April 21, 2023, ARS filed a lawsuit ("ARS/MMA Lawsuit") against the Houston law firm of McClenny, Moseley & Associates, PLLC ("MMA"). According to that lawsuit, on December 17, 2021, ARS wired MMA the amount of $3 million as an investment to provide capital for MMA to use toward lead generation to bring in clients who had property damage claims from the August-September 2021 Hurricane Ida catastrophic weather event. As alleged by ARS, MMA through its principal John Moseley promised ARS a return on its investment at a rate of 429% in 9 months or 572% in 12 months. This would come from MMA paying ARS a portion of MMA's contingency attorney fees.[3] ARS alleges that it hasn't seen a dime from that investment and has therefore sued MMA and Moseley for various causes of action. That case is pending as *Access

---

[2] See <https://www.arsgem.com/contact>, last accessed November 25, 2024.
[3] Fee-sharing with a non-lawyer is prohibited by Rule 5.04(a) of the Texas Disciplinary Rules of Professional Conduct.

*Restoration Services US, Inc. vs. McClenny Moseley & Associates, PLLC, et al.,* Cause No. 2023-25422 in the 270th Judicial District Court of Harris County, Texas.

21.  Furthermore, on April 26, 2023, using the same attorneys from the ARS/MMA Lawsuit, GES sued MMA on a claim that MMA owes GES $9.8 million for invoices for GES's work for MMA ("GES/MMA Lawsuit"). That case is pending as *Global Estimating Services, Inc. v. McClenny Moseley & Associates, PLLC,* Cause No. 2023-26243 in the 133rd Judicial District Court of Harris County, Texas. Plaintiffs do not know at this time what contractual terms may exist between GES and MMA to substantiate GES's claim.[4] The relevance of these cases to the present suit will be described shortly. Both lawsuits are currently stayed due to MMA filing for bankruptcy in April 2024.

22.  Plaintiff performed the work of a Field Inspectors for GES.[5] In this position, Plaintiff and other Field Inspectors would travel to the sites of property loss to document the damage to the properties. Field Inspectors would merely document the property damage and transmit the information to GES' inside estimators. Although "Field Inspector" is an appropriate title for their position, to be clear, Plaintiffs did not actually "inspect" any properties to determine whether they conformed to any professional or regulatory standards. They merely "inspected" a site of property loss to document what damage they observed. As a Field Inspector from another lawsuit described it, the most discretion they exercised in this position was to determine whether a photo they took

---

[4] Both the ARS/MMA Lawsuit and the GES/MMA Lawsuit are curiously lean on the disclosure of the parties' contractual terms and other fact allegations, despite the substantial monetary claims being made in those cases.

[5] Any representation that Plaintiffs performed work "for GES" or that an action was taken "by GES" is for historical convenience only and is not to be deemed an admission that GES was not the alter ego of ARS.

was too blurry and needed to be retaken. These Field Inspectors sometimes referred to themselves as "glorified picture takers."

23. Plaintiff Franklin performed one facet of an interstate insurance claims and property repair and remediation scheme, as part of the recovery process for federally-declared disaster areas. GES Field Inspectors would travel to and throughout Louisiana and Florida to record data and take photos for the estimates that would be used by Texas-based GES and ARS to formulate estimates for substantial hurricane and storm damage. Those estimates would be then used by Texas-based law firm MMA to prepare settlement demands and prosecute claims against national insurers on behalf of Louisiana and Florida homeowners (many of whom apparently were not actually MMA clients). ARS staff would then travel to Louisiana and Florida to engage in the repair and remediation of the affected properties. ARS's subsequent repair and remediation of the affected properties that had been "inspected" by the Field Inspectors, including Plaintiff, would necessarily involve the local and interstate shipment of construction goods for the repair and remediation of the affected properties. In southwest Florida after Hurricane Ian, a substantial portion of the inspections performed by Plaintiff and the other Field Inspectors were simply one step in ARS's mitigation work for those properties.

24. Plaintiff and the other Field Inspectors understood that the residential claims on which they performed inspections in the field especially in Louisiana were for (purported) MMA clients. However, GES suspiciously instructed Field Inspectors to never to speak to the lawyers at MMA concerning the property claim cases. Also suspiciously, GES instructed the Field Inspectors to document *all* damage to the property, regardless of whether the damage was storm-related or not, and to keep their damage scope descriptions uncharacteristically vague.

25. On or about January 5, 2022, ARS registered its Delaware-charted entity with the Texas Secretary of State as doing business in this state as a foreign for-profit corporation.

26. On or about January 24, 2022, GES was created in the state of Delaware. On or about February 7, 2022, GES was registered with the Texas Secretary of State as doing business in this state as a foreign for-profit corporation.

27. During the period of time relevant for this lawsuit, both ARS and GES identified the same two individuals as each company's managers – Guiseppe Gagliano and Domenico Gagliano, who are brothers and who reside in Canada.[6] Both managers' addresses were given as ARS's Texas headquarters address – 27657 Commerce Oaks Drive, Conroe, TX 77385 USA – in both registrations. Those registrations also provided that same address as the business address of both companies.

28. Returning to the two MMA lawsuits, in the ARS/MMA Lawsuit, ARS claims damages related to its $3 million investment. ARS claims that it was promised a return on the investment that would apparently be in the $15M-$17M range. At the same time, in the GES/MMA Lawsuit, GES is claiming that it is owed $9.8 million in unpaid invoices from MMA for the same period of time. Plaintiff wonders how ARS could have received a $15M-$17M return on its investment from these claims if GES was simultaneously burdening MMA with almost $10M in debt for work on those same claims.

29. Upon information and belief, it appears that ARS set up GES to assist MMA in perpetrating potential fraud against the residential insurers of MMA's clients. Upon information and belief, it

---

[6] The Texas filing for GES erroneously identifies Domenico Gagliano as "Gagliano Domenico." In January 2024, per the Texas SOS, GES changed its managers from the Gagliano brothers to company President/CFO/Director Scott Jacobi exclusively. In April 2024, GES changed its management to identify Guiseppe Gagliano as the sole President and Director.

appears that ARS was likely using what were in fact inflated in-house property damage estimates for MMA cases to increase the claim values in those cases. Inflated estimates, in theory, would lead to higher claim values and therefore a more substantial return for ARS on its $3 million investment.

30. While Plaintiff was not aware of what specific methods may have been used to potentially inflate the property damage estimates, the fact that GES would instruct its Field Inspectors to document non-covered, unrelated property damage, and to also leave the scope of damage sheets vague, would comport with the theory that ARS was using GES to perpetrate a fraud through, in part, the in-house estimates. Due to the facts set out within this section upon the information and belief of Plaintiff, Plaintiff with the assistance of counsel alleges that GES was acting as the alter ego of ARS to assist in perpetrating a fraud. Plaintiff further alleges that ARS was using GES to unlawfully engage in public adjusting in the state of Louisiana.

31. Normoyle is ARS's Vice President of Global Operations. Upon information and belief, Normoyle also served as President of GES throughout the employment of Plaintiff.

32. To perform the work for GES, Plaintiff was issued equipment and vehicles that, upon information and belief, are/were likely purchased, owned by, and/or leased by ARS. Plaintiff was also issued a gas card on the account of ARS that was to be used by him for GES work. In southwest Florida for his GES work, upon information and belief, Plaintiff stayed in lodging paid for by ARS. Plaintiff's work in southwest Florida was substantially under the supervision and control of ARS.

33. Plaintiff was employed on a W-2 basis by GES from on or around May 10, 2022 to April 28, 2023. Plaintiff came to GES with promises of substantial bonuses but no other plan terms otherwise in place at the time of hire.

34. On or about August 9, 2022, GES General Manager/Defendant Autumn Garibay sent an email that outlined the specifics of the bonus plan that was referenced in Franklin's offer letter. Franklin and all of the other then-Field Inspectors were sent this email. Based on the terms of this bonus plan, Franklin contends he exceeded 120 inspections in the 4th Quarter of 2022, and therefore earned a production bonus for that quarter under the plan. Furthermore, Franklin earned customer service and quality bonuses for Q3-2022, Q4-2022, Q1-2022, and Q2-2022 (partial).

35. Upon information and belief, and due to various interactions that various Field Inspectors had with ARS executives and managers, Plaintiff contends that executives and managers from ARS, including Defendants Normoyle and Needham, were regularly and frequently directing the operations of GES through Garibay. At the same time, Garibay was directly responsible for executing the orders of Needham and Normoyle that led to Franklin working substantial overtime hours in southwest Florida in the 4th Quarter of 2022, beginning after his arrival there around November 15, 2022. All three individual defendants were responsible for: formulating the work and pay policies for Plaintiff and the other Field Inspectors; the hiring and firing of Plaintiff and the other Field Inspectors; the conditions of Plaintiff's employment with GES, especially in southwest Florida in Q4-2022.

36. Plaintiff Franklin was released from employment on or about April 28, 2023 along with the rest the remaining Field Inspectors on staff, as part of ARS's overall shutdown of GES's operations. To date, Franklin has never been paid a single dime of his earned bonuses, nor has he been paid any overtime wages.

37. Plaintiff contends upon information and belief that executives and managers from ARS directed Garibay and GES not to issue bonuses to Plaintiff and the other Field Inspectors or otherwise proceed with the company's contractual obligations under the incentive compensation

agreement. ARS was aware of the bonus agreement between GES and Plaintiff and in reality had effectively created them. By so directing Garabay and GES, ARS was interfering with the contractual relationship between Plaintiff and GES and proximately caused the Plaintiff the loss of this compensation.

38. There were other circumstances that demonstrated the interconnectedness of ARS and GES. Some examples:

- GES's offer letters to the Plaintiff and the other Field Inspectors were signed by Scott Jacobi, Chief Financial Officer of ARS who was never an employee of GES.

- Gas cards were imprinted with the account name "ARS GEM" and drawn from ARS's account, even when the cards were to be used by GES Field Inspectors like Franklin.

- On some occasions, some Field Inspectors have been paid directly by ARS rather than GES, despite being ostensibly employed by GES.

- While working in Florida, Field Inspectors were required to fill out ARS timesheets bearing the ARS logo and later had their inspections tracked on an ARS-branded app. In fact, the vast majority of inspections performed by GES Field Inspectors, including Plaintiff, in southwest Florida in Q4-2022 were to assist ARS with its remediation work and were therefore subject to the direction and control of ARS.

Plaintiff believes that discovery in this case will yield additional ties, including many financial ties between ARS and GES in the companies' financial records that substantiate Plaintiff's allegations that GES was merely an alter ego of ARS to engage in activities or business arrangements that were prohibited by law.

**The field inspectors were non-exempt from the overtime provisions of the FLSA.**

39. As a Field Inspector, Plaintiff Franklin's position was not exempt from the overtime provisions of the Fair Labor Standards Act of 1938. His responsibility was to take photos of damage to a property and upload data and photos into software that would prepare a sketch of the property. He would then transmit that information to GES's inside estimators, who would prepare the property damage estimates. His primary duty did not involve the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers. Furthermore, his primary duty did not include the exercise of discretion and independent judgment with respect to matters of significance. In fact, Franklin and the other Field Inspectors were performing the manual "line work" of the services provided by GES and ARS, specifically the type of work that the FLSA and controlling case law describe as non-exempt work.

40. Franklin was paid on a salary basis.

41. While in southwest Florida in the 4th Quarter of 2022, Franklin worked over 40 hours in more than one workweek as part of his W-2 employment with GES.

42. Because GES was only formed in January 2022, all of the overtime work described in this suit took place within 3 years from the date of filing of this suit. With that said, Plaintiff contends that Defendants' violations of the FLSA were willful, as Defendants knew or should have known that the nature of Plaintiff's job duties would render his position non-exempt under the FLSA.

43. At no time was Franklin paid an overtime premium for hours worked over 40 in a workweek, in violation of the FLSA.

**Franklin is further owed bonuses for his inspection work**

44. Franklin began his employment on or about May 10, 2022. Per his Offer Letter/Employment Agreement, he was not eligible to participate in the company's inspection bonus matrix plan until three months after the start of his employment. Therefore, Franklin became eligible to participate in the bonus plan on or about August 10, 2022, which was in the 3rd Quarter of 2022.

45. For Q3 and Q4 of 2022, as well as Q1 of 2023, Franklin earned the full customer service and quality bonuses as outlined in the bonus matrix emailed by Autumn Garibay on or about August 9, 2022. For those three quarters, Franklin is owed $24,000, as he qualified for the criteria set out within the bonus plan for those quarters.

46. Because Franklin only worked from April 1-28 in the 2nd Quarter of 2023, he claims a prorated portion of the $8,000 customer service plus quality bonuses for that quarter. Because he worked for 30.8% of Q2-2023, he is owed $2,464 for that quarter for those bonuses, as he qualified for the criteria set out within the bonus plan for that portion of that quarter.

47. For the 4th Quarter of 2022, Franklin estimates that he performed 140 inspections in that quarter (despite incomplete company records suggested he performed less than this). Per the bonus matrix, Franklin is entitled to an additional $3,000 for performing 20 inspections above 120 in that quarter, which provides him with a bonus of $150 for each such additional inspection.

**Individual liability under the FLSA**

48. Garibay was the General Manager of GES and was directly involved in its daily operations. Upon information and belief, Garibay also served as a conduit for the directives and messages of the other defendants in this case, and worked under their supervision in executing the daily operations of GES and the fraud alleged by the Plaintiff in this case. Garibay herself engaged in

direct supervision of the Plaintiff in this case, and exercised control over the working conditions and work schedules of Plaintiff. She was also involved in the hiring and terminations of GES Field Inspectors, including Plaintiff.

49.  Upon information and belief, ARS Vice President of Global Operations Nathan Normoyle was directing GES management decisions through Garibay and acted as President of GES. Normoyle was intimately involved in the hiring of certain Field Inspectors and interviewed and made job offers to the first four GES field inspector employees. Upon information and belief, Normoyle directed the work of Garibay and indirectly Plaintiff Franklin in this case, and held the authority to do so as ARS's VP of Global Operations. Upon information and belief, Normoyle helped determine when and where Plaintiff would go to perform inspections, assisted in making day-to-day operational decisions that affected the conditions of employment for Plaintiff, helped develop Plaintiff's compensation structure, oversaw the maintenance of Plaintiff's employment records, and played a role in the decision to terminate him and the remaining Field Inspectors in April 2023.

50.  Upon information and belief, ARS Director of Field Operations Michael Needham was also directing GES management decisions directly and through instructions to Garibay. Needham was directly involved in the hiring of certain Field Inspectors, including the first four field inspectors hired by GES, and was involved in their interviewing process. Upon information and belief, Needham directed the work of Garibay and, indirectly, Plaintiff in this case, and held the authority to do so as the operations manager for field operations of GES. Upon information and belief, Needham helped determine when and where Plaintiff and the other Field Inspectors would go to perform inspections (especially in southwest Florida), assisted in making day-to-day operational decisions that affected the conditions of employment for the Plaintiff, helped develop

Plaintiff's compensation structure, oversaw the maintenance of Plaintiff's employment records, and played a role in the decision to terminate him and the remaining Field Inspectors in April 2023.

## VI. CAUSES OF ACTION

### Cause of Action 1: Breach of Contract (GES and ARS)

51. Incorporating the facts alleged above, Plaintiff Franklin alleges that Defendant GES breached its incentive compensation agreement with Plaintiff by failing to pay all bonuses earned by Plaintiff through his performance, thereby causing Plaintiff damages. Plaintiff seeks the amount of unpaid bonuses as well as any consequential or special damages, pre- and post-judgment interest, attorney fees, and costs. Defendant ARS bears equal liability for any liabilities of GES due to the fact that GES was in fact the alter ego of ARS.

### Cause of Action 2: Tortious Interference with a Contract (ARS)

52. In the event that Defendant GES is found not to be the alter ego of ARS, and therefore ARS is deemed to be an independent actor for purposes of liability in this case, ARS tortiously interfered with Plaintiff's contract with GES by directing GES to not pay bonuses to the Plaintiff or otherwise conform to its pay obligations with respect to Plaintiff, and therefore caused GES to breach its agreements with Plaintiff. ARS was well aware of the contract between GES and Plaintiff and, despite that knowledge, willfully and intentionally interfered with that contract by directing GES not to comply with it. ARS's interference was the proximate cause of damages claimed by Plaintiff in this suit resulting from GES's breach of his pay agreement. Plaintiff claims all damages available by law, including economic damages, mental anguish damages, punitive damages, pre- and post-judgment interest, and costs.

### Cause of Action 3: Overtime Violations under the Fair Labor Standards Act
### (all Defendants)

53. During the three years prior to the filing of this complaint, all Defendants violated the FLSA, including 29 U.S.C. §§ 206-7 and 215(a)(2), by employing Franklin in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA as previously stated, where Franklin worked in multiple workweeks for more than 40 hours in each such workweek, without Defendants compensating him for all of his compensable work in excess of forty hours per week at rates no less than one-and-a-half times the regular rates for which he was employed. Plaintiff was not exempt from the overtime provisions of the Fair Labor Standards Act. Defendants have acted willfully in failing to pay Plaintiff in compliance with the FLSA. Plaintiff is entitled to his unpaid overtime wages, liquidated damages in an amount equal to such unpaid overtime wages, attorney fees, court costs, and pre- and post-judgment interest. Plaintiff further contends that GES and ARS were engaged in a joint enterprise and should be considered jointly for purposes of FLSA applicability and liability, as ARS was also an "employer" of Plaintiff as defined by the FLSA.

### VII. ADDITIONAL LEGAL CONTENTIONS

54. To the extent that GES claims that a bonus was not earned by Plaintiff in any given quarter, Plaintiff would contend that he engaged in substantial performance under the bonus agreement as to the work qualifying him for the bonus. Plaintiff would also contend that the bonus agreement was a unilateral offer that was accepted by his performance, and no terms of the bonus agreement allowed GES to withhold bonuses altogether once performance had been rendered. Plaintiff further contends that GES has waived any such contentions based on Garibay's statements and assurances to Plaintiff and the other Field Inspectors concerning the future payment of their bonuses following

the issuance of the written bonus structure. The acts and omissions of Defendant GES are the acts and omissions of Defendant ARS due to the fact that GES was in fact the alter ego of ARS.

55.     To the extent that GES claims that an event has yet not occurred that entitles GES to withhold Plaintiff's bonuses until such event occurs, Plaintiff would contend that GES's action is based on a condition precedent unrelated to a Plaintiff's performance, and such condition precedent is not a material performance condition to Plaintiff's right to his claimed bonuses otherwise earned for completed performance under the bonus agreement. The acts and omissions of Defendant GES are the acts and omissions of Defendant ARS due to the fact that GES was in fact the alter ego of ARS.

## VIII. JURY DEMAND

56.     A jury is hereby demanded and the appropriate fee tendered.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that the Court:

a. assume jurisdiction of this action and cite Defendants to appear;

b. award Plaintiff his damages requested above, including economic, consequential, compensatory, and punitive damages as allowed by law, as well as liquidated damages under the FLSA, and attorney fees;

c. award Plaintiff his costs, expert witness fees, and attorney fees;

d. award Plaintiff his pre- and post-judgment interest at the highest rates allowed; and

e. award Plaintiff any such other relief to which the Court and the law deems Plaintiff entitled.

Respectfully submitted,

*Kerry O'Brien* (signature)

**Kerry V. O'Brien**
Texas Bar No. 24038469
Board Certified in Labor & Employment Law by the TBLS



1011 Westlake Drive
Austin, Texas 78746
email: ko@obrienlawpc.com
phone: (512) 410-1960
fax: (512) 410-6171

**COUNSEL FOR PLAINTIFF FRANKLIN**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kerry O'Brien on behalf of Kerry O'Brien
Bar No. 24038469
KO@OBRIENLAWPC.COM
Envelope ID: 94990891
Filing Code Description: Petition
Filing Description: Plaintiff's Original Petition and Jury Demand
Status as of 12/5/2024 3:40 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kerry O'Brien | | ko@obrienlawpc.com | 12/5/2024 2:38:57 PM | SENT |
| Beth Sigmon | | beth@obrienlawpc.com | 12/5/2024 2:38:57 PM | SENT |

EXHIBIT "B" TO NOTICE OF REMOVAL